J-A10044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARQUIS MCCLAIN | : | |
| | : | |
| Appellant | : | No. 1472 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000216-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARQUIS MCCLAIN | : | |
| | : | |
| Appellant | : | No. 1474 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005237-2021

BEFORE:   PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 24, 2024**

Appellant, Marquis McClain, appeals from the judgments of sentence imposed by the Philadelphia County Court of Common Pleas after he entered open guilty pleas to two counts each of possession of a firearm by a prohibited person, carrying firearms without a license, and carrying firearms on public

_____

[*] Retired Senior Judge assigned to the Superior Court.

property or public streets in Philadelphia, and single counts of possessing a firearm with an altered manufacturer's number and furnishing false identification to law enforcement authorities.[1] He challenges the discretionary aspects of his aggregate sentence of seven to fourteen years' imprisonment, to be followed by two years' probation. Upon review, we affirm.

With respect to the case at CP-51-CR-0005237-2021, Police Officer Eric Kelly was on bike patrol with a partner on August 25, 2020, in the area of 2200 Judson Walk in the Raymond Rosen Housing Projects in Philadelphia, when he noticed Appellant in the front passenger seat of a car parked in a no-parking zone. N.T. 11/22/22, 7-10, 12-13. Appellant was bending over in the seat at the waist "as if he was trying to conceal something under the seat." *Id.* at 13. After Appellant and another man in the driver's seat were removed from the car, Officer Kelly saw a clear bag of marijuana on the passenger seat. *Id.* at 15-16, 29. While searching the passenger's side of the car, the officer observed a black firearm under the seat. *Id.* at 17. The officers then detained Appellant and recovered the firearm, which was loaded with six live rounds in its magazine and one in its chamber. *Id.* at 17-18. Appellant did not have a license to carry the recovered firearm and was precluded from possessing a firearm based on a prior conviction for possessing a controlled substance with intent to deliver. *Id.* at 19, 52-53.

_____

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 6108, 6110.2(a), and 4914(a), respectively.

With respect to the case at CP-51-CR-0000216-2022, police officers were on patrol at 8:17 p.m., on November 3, 2021, in the area of 1400 West Glenwood Avenue in Philadelphia, when they conducted a motor vehicle violation stop of a car driven by Appellant that had a Massachusetts license plate. N.T. 11/22/22, 54-55. The vehicle's registration came back as a rental car owned by a business named EAN Holdings. *Id.* at 55. There were no inspection or emission stickers on the car. *Id.* Appellant provided the officers the car's certificate showing that EAN Holdings was the owner but said that the car was his brother's. *Id.* Appellant was also unable to provide the officers with an identification card. *Id.* Appellant was nervous during his interactions with the police officers and told them his name was "Malik." *Id.* When the officers asked him to exit the car, he asked them why, turned toward the car's center console, and began reaching inside the console. *Id.* at 56. Appellant eventually stepped out of the car and was detained in a police patrol car. *Id.* Appellant then identified himself as "Terrance" and said that his identification was in the car. *Id.* Upon returning to the car, the officers saw a large black firearm underneath the driver's seat. *Id.* They recovered the gun which was a silver 9mm Luger TEC-DC9, loaded with thirty-three live 9-mm rounds, and had an obliterated serial number. *Id.* at 56-57. As with the prior matter, Appellant was ineligible to possess a firearm at that time. *Id.* at 57.

On November 22, 2022, Appellant entered his open guilty pleas. He pleaded guilty to single counts of possession of a firearm by a prohibited person, carrying firearms without a license, and carrying firearms on public

property or public streets in Philadelphia at CP-51-CR-0005237-2021, and single counts of possession of a firearm by a prohibited person, carrying firearms without a license, carrying firearms on public property or public streets in Philadelphia, possessing a firearm with an altered manufacturer's number, and furnishing false identification to law enforcement authorities at CP-51-CR-0000216-2022. N.T. 10/22/26, 54, 58-59. Appellant waived a pre-sentence investigation report and a mental health assessment, but sentencing was deferred to give the parties an opportunity to prepare sentencing memorandums for the court. *Id.* at 59.

On December 16, 2022, Appellant appeared for sentencing. He requested an imprisonment term with a two-year minimum and a maximum between six and eight years. N.T. 12/16/22, 15. The Commonwealth requested an aggregate prison term of twelve to twenty-four years, consisting of guideline-range terms including a mix of consecutive and concurrent terms. *Id.* at 16-17.

Relevant to one of the issues before us, the Commonwealth played a video from an Instagram account for the court showing Appellant riding a dirt bike, supposedly while he was out on bail. N.T. 12/16/22, 24. According to the Commonwealth, Appellant had been arrested while out on bail for the first of his two cases before us and had charges withdrawn in connection with "two incidents where [he] was driving a stolen dirt bike on the streets of Philadelphia." *Id.* at 21. In the video, Appellant screamed, "I ain't scared of the law. Fuck the po-po," while there was a police patrol car in the background

with its lights activated. *Id.* at 24. The defense objected to the presentation of the video based on authentication concerns. *Id.* at 22 ("Judge, my only objection to this would be, you know, for it to be authenticated and time, date, and place, whose account it came from. So, I mean, I've seen the video, but I don't know when it's from, where it was seized from."). The Commonwealth identified the video as from an account with the name, "QUIS_MANTMANT," that appeared with a "face … exactly like" Appellant's. *Id.* at 23. The court viewed the video and determined that Appellant was the person in it. *Id.* at 25 ("… Mr. McClain has very distinct tattoos and the placement of those tattoos on the side of his face as well as the center of his face. Based on those, I do believe that that is Mr. McClain on the video."). The court also noted that, "[w]ith regards as to when that video was made, posted, *et cetera*," it did not "have anything on this record," *i.e.*, there was no accompanying testimony establishing when the video was recorded and posted to the internet. *Id.*

The court sentenced Appellant to seven to fourteen years' imprisonment, to be followed by two years' probation for his § 6105 violation at CP-51-CR-0000216-2022, a concurrent imprisonment term of four to eight years for his other § 6105 violation at CP-51-CR-0005237-2021, a concurrent imprisonment term of five to ten years for his § 6110.2 violation, a concurrent two-year probation term for his § 6106 violation at CP-51-CR-0005237-2021,

and no further penalty for the remaining offenses.[2]   Sentencing Orders,

12/16/22; N.T. 12/16/22, 30-32.   The court prefaced the entry of the

sentencing scheme with the following remarks:

> If [*sic*] fashioning a sentence here today, the Court has taken into account, on the dockets before me, Mr. McClain's prior record score, and range, his history and character, the Commonwealth's sentencing memorandum that has been marked as C-1, as well as the evidence that was displaced [*sic*] here in court.
>
> …
>
> I've also taken into consideration the fact that these are open guilty pleas with regards to two gun cases before me.

---

[2]  The imprisonment term for the § 6105 violation at CP-51-CR-000216-2022 constituted an upward deviation from the aggravated range of the Sentencing Guidelines' recommendation.  For that term, where Appellant had a prior record score of two, the guidelines recommended a minimum imprisonment term of 48 to 66 months, plus or minus twelve months for aggravating or mitigating circumstances.  N.T. 12/16/22, 9; *see* 204 Pa. Code § 303.15 (applying an offense gravity score of eleven to the § 6105 violation) (7th ed., amend. 6); 204 Pa. Code § 303.16(a) (basic sentencing matrix) (7th ed., amend. 6).

The concurrent imprisonment term for the other § 6105 violation at CP-51-CR-0005237-2021 was at the bottom of the minimum imprisonment term recommended by the Sentencing Guidelines: 48 to 66 months, plus or minus 12 months for aggravating or mitigating circumstances.  N.T. 12/16/22, 9; *see* 204 Pa. Code § 303.15 (applying an offense gravity score of eleven to the § 6105 violation) (7th ed., amend. 5); 204 Pa. Code § 303.16(a) (basic sentencing matrix) (7th ed., amend. 5).

The concurrent imprisonment term for the § 6110.2(a) violation at CP-51-CR-0000216-2022 was above the aggravated range for the minimum sentence recommended by the Sentencing Guidelines for that offense: 36 to 48 months, plus or minus 12 months for aggravating or mitigating circumstances.  *See* 204 Pa. Code § 303.15 (applying an offense gravity score of ten to a § 6110.2(a) violation where the gun was loaded) (7th ed., amend. 6); 204 Pa. Code. § 303.16(a) (basic sentencing matrix (7th ed., amend. 6).

However, I am noting that these are not the kind of guilty pleas that happen straight from a scheduling conference. These cases did make their way through.

In particular, Mr. McClain, it sounds like we have a tale of two men -- one that your family is sitting here and talking about and here to support and one that you are eloquently speaking about, and then one that is engaging in behavior that at a minimum you're too old to be doing and also is illegal, and had firearms in this case both times.

Sir, I'm unsure where we've taken a turn. But 13 months ago, you decided that somehow, someway, that this was the path that you wanted to be on. We are not here on one case; we're here on two.

You were already on notice that you shouldn't have a firearm. You already knew that because you were out on bail when you picked up the second one. And that plays a large part in my sentencing.

*Id.* at 29-30.[3]

On December 26, 2022, Appellant's counsel filed a motion for reconsideration of sentence and a motion to withdraw as counsel. In the reconsideration motion, Appellant set forth the following grounds for relief:

The [c]ourt abused its discretion at sentencing because the trial court:

> A.    Sentenced Defendant without providing sufficient reasons for the sentence imposed;

_____

[3] When the court noted, "These cases did make their way through," it appeared to be referencing the fact that Appellant entered his guilty plea after unsuccessfully litigating motions to suppress the firearms in each of the cases and on a date that the court was scheduled to preside over a trial. *See* N.T. 11/22/23, 4.

- 7 -

B. Failed to give careful consideration to all relevant sentencing factors;

C. Failed to give Mr. McClain any consideration for entering a plea and accepting responsibility for his conduct;

D. Improperly admitted and considered evidence presented by the Commonwealth in the form of a video allegedly of Mr. McClain riding a motorcycle, which was not properly authenticated;

E. Gave too much weight to Mr. McClain's age as a factor for the sentence imposed;

F. Improperly considered and gave too much weight to the firearm possessed in docket # CP-51-CR-0000216-2022 as being more dangerous than the firearm possessed in CP-51-CR-0005237-2021;

G. On Docket CP-51-CR-0000216-2022 at count one (1), sentencing Mr. McClain to a term of imprisonment above the aggravated range without stating on the record the reasons for such a sentence;

H. On Docket CP-51-CR-0000216-2022 at count two (2), sentencing Mr. McClain to a term of imprisonment at the top of the aggravated range without stating in the record the reasons for such a sentence;

I. Failed to take into account that this was Mr. McClain's first sentence of incarceration; and

J. Failed to take into account Mr. McClain's expression of remorse at his sentencing hearing.

Motion for Reconsideration of Sentence, 12/26/22, ¶ 3. The plea court granted the counsel withdrawal motion and ordered the appointment of new counsel on April 18, 2023. Order Granting Motion to Withdraw Counsel, 4/18/23, 1; Short Certificate, 4/18/23, 1. The reconsideration motion was

denied by operation of law on May 3, 2023. Order Denying Post-Sentence Motion, 5/3/23, 1. Appellant filed separate timely notices of appeal in each of his underlying cases on May 23, 2023. Notices of Appeal, 5/23/23, 1. The plea court only ordered Appellant to file a concise statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(b), with respect to the case at CP-51-CR-0005237-2021, but Appellant filed Rule 1925(b) statements in both cases within the deadline ordered by the court.[4] Rule 1925 Order, 5/24/23, 1; Rule 1925(b) Statement, 6/12/23, 1-2.

Appellant presents the following questions for our review:

1. Whether it was an abuse of discretion for the [t]rial [c]ourt not to consider all of the relevant sentencing factors?

2. Whether it was an abuse of discretion for the [t]rial [c]ourt to view an Instagram video proposed by the prosecutor that was not authenticated at the [s]entencing [h]earing?

3. Whether it was an abuse of discretion for the [t]rial [c]ourt to impose a sentence that was unduly excessive in sentencing [Appellant] above the aggravated range, resulting in a manifestly excessive sentence of 7-14 years of incarceration on 1472 EDA 2023 (CP-51-CR-0000216-2023)?

Appellant's Brief at 4 (suggested answers and answers of the lower court omitted).

_____

[4] The plea court filed a letter in lieu of an opinion because the jurist who sat as the plea court was no longer sitting as a judge for the Court of Common Pleas of Philadelphia County.

Appellant presents a three-fold challenge to the discretionary aspects of his sentence. He alleges that the sentencing court abused its discretion by: (1) failing to consider his rehabilitative needs, Appellant's Brief at 15-16; (2) viewing the Instagram video without authentication of the time, date, and location of the recording, *id.* at 16-17; and (3) imposing a "manifestly excessive sentence," without setting forth a contemporaneous written statement of its reasons for deviating from the imprisonment range recommended by the Sentencing Guidelines, *id.* at 17-20.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether this is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> …
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

As noted above, Appellant filed timely notices of appeal. We agree that he preserved his appellate claims in his post-sentence motion for reconsideration of sentence, and additionally note that he preserved his claim about the sentencing court's consideration of the Instagram video with a contemporaneous objection. *See* Motion for Reconsideration of Sentence, 12/26/22, ¶ 3(A)-(B), (D), (G)-(H); N.T. 12/16/22, 22. Appellant also included a separate statement in his brief pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 10-11.

Upon considering the Rule 2119(f) statement, we find that all the claims raised on appeal present substantial questions permitting us to proceed with substantive review. Appellant's combined arguments that the sentencing court imposed an excessive sentence and failed to consider his rehabilitative needs as a mitigating factor raise a substantial question. *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (stating that a claim of an excessive sentence combined with a claim that the court failed to consider mitigating factors raises a substantial question). The claim concerning the Instagram video raises a substantial question because it asserts, based on a lack of authentication, that the sentencing court considered incorrect factual assertions or improper factors. *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004). Likewise, the assertion that the sentencing judge did not state adequate reasons for deviating from the Sentencing Guidelines' recommendation raises a substantial question. *Commonwealth v. Garcia-*

*Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009). Accordingly, we may proceed with reviewing the substantive merits of each of the claims.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Derrickson*, 242 A.3d 667, 680 (Pa. Super. 2020) (citation omitted). As the longest individual imprisonment term that forms the structure of Appellant's sentencing scheme is a term constituting an upward deviation from the minimum term recommended by the Sentencing Guidelines, we note that we "shall vacate the sentence and remand the case to the sentencing court with instructions if [we] find[] … the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3).

In his first claim, Appellant argues that the lower court did not consider his rehabilitative needs in rendering its sentence. Appellant's Brief at 15. He asserts that the court instead focused on the gravity of his offenses. *Id.* He bases the court's supposed lack of consideration of his rehabilitative needs on the fact that the court "did not mention" the circumstances that he discussed in his allocution statement and that were addressed in his wife's letter to the

- 12 -

court and because "the record provides no indication that the court considered these essential and favorable factors in fashioning [his] sentence." *Id.*

Under 42 Pa.C.S. § 9721(b), the sentencing court is statutorily required to consider a defendant's rehabilitative needs, among other mandated factors, when imposing a sentence. At the same time, however, "[t]he court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b)." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008). Instead, "the record as a whole must reflect due consideration by the court of the statutory considerations." *Id.*

Here, the sentencing court did not recount the content of the Appellant's allocution statement or his wife's letter to the court or specifically articulate the words, "rehabilitative needs," in its statement of reasons for its sentence. Rather, the court referenced, among its larger explanation for the sentence, its consideration of Appellant's "history and character … as well as the evidence" that was presented at the hearing. N.T. 12/16/22, 29. The mention of "the evidence that was presented" was a reference by the court of, *inter alia*, the letter of Appellant's wife, *id.* at 9-11, and the statement Appellant prepared for the court. *Id.* at 27-29. By referring to Appellant's "history and character," the court made clear that it was aware of the mitigation arguments which ultimately addressed Appellant's rehabilitative needs. While the court spent the majority of its statement of reasons focusing on the need for a significant imprisonment term, the record belies Appellant's assertion that the

sentencing court ignored the statutorily mandated sentencing factors, including his rehabilitative needs.

In his second claim, Appellant asserts that the sentencing court abused its discretion by viewing the Instagram video presented by the Commonwealth in the absence of testimony to authenticate it and establish, among other things, when the video was recorded. Appellant's Brief at 16-17. Appellant concedes, however, that it is not clear from the record that the video was admitted into evidence. *Id.* The Commonwealth responds that "the court properly ruled that the video should be considered for sentencing because it demonstrated that [Appellant] continued to do illegal actions while awaiting trial." Appellee's Brief at 10. The Commonwealth also notes: "The court's only finding of fact was that [Appellant] was in the video, it did not penalize [him] further for allegedly stealing the bike. Additionally, [Appellant] was able to rebut the evidence, which they did by challenging the date of the video." *Id.*

When formerly reviewing an evidence admissibility issue in the context of a sentencing proceeding, we noted:

> The admissibility of evidence … rests with the sound discretion of the trial court. The conduct of a sentencing hearing differs from the trial of a case. To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

***Commonwealth v. King***, 182 A.3d 449, 455 (Pa. Super. 2018) (citations and quotation marks omitted); ***see also Commonwealth v. Knepp***, 453 A.2d 1016, 1018 (Pa. Super. 1982) ("The information used by a judge, in imposing sentence, need not necessarily meet the standards of admissible evidence at trial."). During a sentencing proceeding, due process allows a court to consider any information, even if it would not be admissible under the evidentiary rules, provided that the evidence has a sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence. ***Commonwealth v. Eldred***, 207 A.3d 404, 408 (Pa. Super. 2019) (citing ***United States v. DeAngelis***, 243 Fed.Appx. 471, 474 (11th Cir. 2007)). In Pennsylvania, due process does not include the ability to cross-examine adverse witnesses post-trial because the Sixth Amendment to the United States Constitution "does not apply in sentencing hearings." ***Id.*** (citing ***Commonwealth v. Wantz***, 84 A.3d 324, 337 (Pa. Super. 2014) (quoting ***United States v. Stone***, 432 F.3d 651, 654 (6th Cir. 2005))).

Because the sentencing court was not bound by the rules of evidence as it would have been at a trial, Appellant needed to demonstrate a due process violation resulting from the sentencing court's viewing of the Instagram video to prevail on the instant discretionary sentencing claim. Here, his claim is silent as to the existence of a due process violation. Instead, he merely cites, in support of the claim, the authentication rule at Pa.R.E. 901(a) and caselaw setting forth the standard of review of a ***trial*** court's decision to admit or

- 15 -

exclude evidence. Appellant's Brief at 16-17. He fails to address any caselaw concerning the admission of evidence in the context of sentencing hearings. Accordingly, he fails to meaningfully discuss the claim or include any legal analysis in a way that would present us a theory for relief upon which we could find an abuse of discretion based on the sentencing court's viewing of the Instagram video. "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014).

In any event, we note that the Instagram video would have been relevant for the sentencing court's consideration as, from the context of the sentencing notes of testimony, it showed him illegally riding a dirt bike in the presence of police officers in the streets of Philadelphia and saying, among other things, "I ain't scared of the law." N.T. 12/16/22, 24. Knowingly using an illegal vehicle and publicly flouting the laws of the Commonwealth or its law enforcement officers would inherently speak to his character and needs for rehabilitation. That the exact timing of the recording of the video was never established below would merely be a factor for the weight the court should have placed on the video in its larger sentencing decision, absent the establishment of a due process violation resulting from the court's consideration of the video.

In his last claim, Appellant asserts that the sentencing court "arrived at a manifestly unreasonable decision" by sentencing him to an imprisonment term above the aggravated range recommended by the Sentencing

Guidelines. Appellant's Brief at 17-20. He also alleges that the sentencing court "imposed a sentence above the aggravated range but did not say why." *Id.* at 19. Because the court opted for the imprisonment term constituting an upward deviation from the aggravated range, he suggests that "all relative factors," including the Sentencing Guidelines' recommendation and his mitigation evidence "were not considered, and instead the court picked out the factors that it determined to be most appropriate in fashioning a sentence." *Id.*

The Sentencing Code requires that the lower court consider the Sentencing Guidelines, and "make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S. § 9721(b). Moreover, when the court imposes a sentence outside the guidelines, a judge "must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range." *Commonwealth v. Royer*, 476 A.2d 453, 458 (Pa. Super. 1984) (emphasis added). "Failure to comply shall be grounds for vacating the sentence … and resentencing the defendant." 42 Pa.C.S. § 9721(b).

In this case, the Commonwealth set forth the applicable guideline range on the record for the Section 6105 violations at the start of the sentencing hearing and defense counsel agreed with the prior record score and offense gravity scores which yielded the range. N.T. 12/16/22, 8-9. Upon stating its

reasons for the sentence imposed, the court noted that it took into account, *inter alia*, Appellant's "prior record score, offense gravity score, and range," evincing its awareness of the applicable guideline range and that the sentence imposed departed upward from the recommended aggravated range.

The court included in its statement of reasons for the sentence that it appreciated that it was imposing terms for two different firearms cases where Appellant had committed the offenses in the second case while out on bail in the first case. N.T. 12/16/22, 30. In these circumstances, we are unable to agree with Appellant on the reasonableness of the sentence or the adequacy of the sentencing court's statement of reasons for the sentence imposed. The Sentencing Guidelines offer recommendations for minimum imprisonment terms for individual offenses, but they do not account for the fact that Appellant was facing sentences in multiple cases where Appellant repeated his illegal act of possessing a firearm while out on bail.

Within the contexts of the cases before us, we conclude that the sentencing court's deviation from the guidelines was reasonable. The trial court could have easily crafted the same imprisonment sentencing scheme by choosing to impose consecutive sentences within the standard and mitigated ranges recommended by the guidelines. In that sense, Appellant's challenge to length of his sentence as a deviation from the guidelines' recommendation is in some sense more about its form than its substance. Moreover, as reflected by the sentencing court's statement of reasons, Appellant could not claim any entitlement to a "volume discount" on his repeated, separate

incidents of firearms offenses. *See **Commonwealth v. Zirkle***, 107 A.3d 127, 134 (Pa. Super. 2017) (reiterating that defendant is not entitled to "volume discount" for his crimes).

In addition, the guidelines did not account for the fact that Appellant had the temerity to commit the second set of offenses while out on bail for charges involving essentially the same activities. While not specifically mentioned by the sentencing court, it also is not lost on this Court that, in between the two criminal matters, Appellant went from illegally possessing a gun loaded with seven rounds to a gun loaded with thirty-three rounds and the latter gun had an obliterated serial number. He also provided false identification to law enforcement in connection with the second case. These differences in the two separate cases marked an increase in criminal conduct (five offenses committed in the second case as opposed to three offenses committed in the first case) but also suggested an increase in the danger that Appellant posed to the community. In these circumstances, we do not find that Appellant's seven-to-fourteen-year imprisonment term was unreasonable or that the sentencing court abused its discretion in imposing a term above the aggravated range recommended by the Sentencing Guidelines. The sentencing court aptly considered the facts of the cases before it and provided proper reasons for imposing the sentence outside the guidelines.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/24/2024